## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

Attachment I

RICHARD J. QUINLIVAN
ELIZABETH A. QUINLIVAN                              CIVIL ACTION
    PLAINTIFF'S PRO SE                              NO
v.

EQUIFAX INCORPORATED
    DEFENDENT

$08 - 40036 FDS$

### COMPLAINT

1. The Plaintiffs are residents of Shrewsbury, Massachusetts, Worcester County, and citizens of the United States.

2. The Defendant Equifax Incorporated is a corporation located at 1550 Peachtree St. N.W., Atlanta, Georgia, 30309.

### JURISDICTION

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. 1332 and [15 U.S.C. 1681 p] 618.

### FACTUAL ALLEGATIONS

4. The Defendant Equifax has violated the Fair Credit Reporting Act (F.C.R.A.) [15 U.S.C. 1681i] 611 (b) Statement of Dispute; [c] Notification of consumer dispute in subsequent consumer reports; [15 USC 1681 n] 616 (1)(A) (2) (3) Civil Liability for Willful Noncompliance. EXHIBIT 1.

Now comes the Plaintiff Richard Quinlivan

5. On 3-1-07 Plaintiff Richard Quinlivan mailed to Equifax after receipt by Plaintiff of the annual credit report from Defendant, a Research Request Form Confirmation #706001236 and requested Equifax to include the disputed consumer statement enclosed



RECEIPT #
AMOUNT $ 350.00
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 3/3/08

therein and to reissue a new credit report showing inclusion of said consumer statement. Exhibit A.

6. On 3-20-07 Plaintiff received requested credit report but no inclusion of consumer statement sent to Defendant on 3-1-07 Exhibit B.

7. On 3-26-07 Plaintiff sent Defendant a second request for inclusion of consumer statement originally sent on 3-01-07 with cover letter regarding RBS National Bank. Exhibit C.

8. On 4-12-07 Plaintiff received from Defendant a credit report without the inclusion of said consumer statement sent in previous communiqués. (Exhibit D.)

9. On 4-20-07 Plaintiff placed a call to Defendant at #888 873-5435 and spoke with a "Dane" at 12:55 P.M. regarding confirmation #7090026140 and Dane indicated that the Plaintiff could only insert a 100 word statement total for all disputed creditors in Plaintiff's report and the fact that Plaintiff had a statement already in the credit report regarding another creditor no other statements could be added as Plaintiff was limited to one - 100 word statement for all creditors inclusive and Plaintiff asked to speak with a supervisor and was put on hold for twenty minutes and consequently Plaintiff disconnected at 1:25 P.M. when no supervisor responded. At 1:40 P.M. 4-20-07 Plaintiff called Defendant again and spoke with a Trisha and reiterated the Plaintiff's conversation with "Dane" and after several placements on "hold" Trisha came back and reiterated the same comments and stated that a consumer was limited to a 100 word statement for all creditors that were disputed. The Plaintiff requested a supervisor and after twenty minutes on "hold" Plaintiff disconnected. At 1:55 P.M. Plaintiff was put on "hold" and at 2:25 P.M. Plaintiff disconnected when no supervisor failed to answer.

10. On 4-28-07 Plaintiff sent certified mail to Defendant a letter dated 4-28-07 regarding

-2-

paragraph 9 above with the request for inclusion of consumer statement regarding RBS National Bank and on 5-3-07 Plaintiff received a credit report with a cover letter from Defendant stating the only one disputed statement could be placed in a consumer's credit file.   Exhibit E dated  5/3/07.

11.  On 6-15-07 Plaintiff received a credit report with no inclusion on Plaintiff's statement in response to Plaintiff's letter of 5-19-07.   Exhibit F.

12.  On 7-29-07 Plaintiff received a credit report with no inclusion of consumer statement as previously requested multiple times.  Exhibit G.

13.  On 9-4-07 Plaintiff sent Defendant a letter requesting inclusion of the consumer statement previously submitted nine times by Plaintiff.  Exhibit H.

14.  On 9/8/07 Plaintiff received a credit report dated 9/8/07 without the included consumer statement as requested on 9/4/07.  Exhibit J.

15.  On or about 3/01/07 Plaintiff received from Experian Credit (another credit bureau) a credit report which includes Plaintiff's statement regarding R.B.S. as well as four other consumer statements submitted to those credit bureaus which were included in that consumer credit report which the Defendant  Equifax claimed the Plaintiff was not entitled to have included in Plaintiff's credit report from Equifax and which the Defendant Equifax  refused to include multiple times in Plaintiff's credit report.   Exhibit K.

16. On or about 6-21-07 Plaintiff received from Trans Union a credit reporting agency a credit report in response to Plaintiff's letter which included Plaintiff's statement of dispute regarding RBS National Bank as well as another consumer statement regarding another creditor which the Defendant claimed the Plaintiff was not entitled to have in

Plaintiff's credit report at Equifax and which Defendant refused to include multiple Times. Exhibit L.

17. Now comes Plaintiff Elizabeth Quinlivan. (Exhibits letter designations M,N and O have been omitted and next Exhibit P follows L above.)

18. On 3-19-2007 Plaintiff sent Defendant a letter (Exhibit P) regarding credit report received by Plaintiff from Defendant on 3-10-2007 Defendant's Confirmation number 7569260171 regarding a negative credit item from R.B.S. National Bank and the Plaintiff requested the Defendant to include the Plaintiff's statement contained in that letter (Exhibit P) in the Plaintiff's credit report.

19. On 4-17-2007 Plaintiff sent Defendant a letter (Exhibit Q) regarding Defendant's letter dated 3-24-07 which stated : "Please be advised that only one consumer statement may be added on your credit file."

20. On 4-26-2007 Plaintiff received a cover letter (Exhibit R) and credit file (Exhibit S) also dated 4-26-2007 confirmation #7115065037 and Defendant's letter stated that: "The following consumer statement has been added/updated to your credit file." The letter from the Defendant references a consumer statement regarding "Wells Fargo" totally unrelated to the Plaintiff's letter of 4-17-2007 (Exhibit Q) and the credit report (Exhibit S) contains a statement regarding R.B.S. National Bank and which statement does not contain the name of R.B.S. National Bank in the included but unidentified consumer credit statement and which statement has two missing sentences from Plaintiff's letter sent to Defendant dated 4-17-07 after being advised by Defendant on 3-24-2007 letter to Plaintiff that Plaintiff was only entitled to one statement. Said missing omitted sentences are: "I have an impeccable credit history. I sued A-Tech in Massachusetts Small Claims Court and A Tech settled reimbursing me $225.80 including court costs."(Exhibit T).

## PLAINTIFFS' SUMMATION

25. The Plaintiffs have 54 (fifty-four) credit files total in their credit reports. (Exhibit
AA Experian-RJQ   Exhibit BB Experian-EAQ). The Plaintiffs use approximately
0.50% of their available credit line in any given month or ½ of 1%. The Plaintiffs have
54 accounts out of 54 in "good standing" or "paid as agreed" with not so much as a 30
day late payment in Plaintiffs' credit history. The Plaintiffs' balance are paid in full each
month and the Plaintiffs never paid any finance charges in their history of credit use.
The Plaintiffs operate on a credit philosophy of never reduce an asset when you can create
a liability utilize the float of 25 days and pay the balance in full when due each month and
pay no interest. The Plaintiffs regard their credit rating as "sacrosanct."

26. The Plaintiffs would not be before the Court today had the Defendant complied with
the Fair Credit Reporting Act with said inclusion of the Plaintiffs' statement regarding
disputed item R.B.S. National Bank as exhibited by the inclusion of the Plaintiffs'
statement as exhibited by Experian and Trans Union in Exhibit K and Exhibit L and
Exhibit X and Exhibit Y and would not be before this Court except that the Defendant
has committed civil violations of the FCRA and has committed deceptive acts and
practices to the Plaintiffs.

27. Both Plaintiffs submitted their multiple requests for inclusion of their disputed
statement **14 (FOURTEEN)** times collectively to be added to their individual credit files
on different dates and not jointly and in separate submissions. Both Plaintiffs have
separate social security numbers as do all consumers yet Defendant implemented the
same stated deceptive act policy to both Defendants with the statement **5** times to each
individual Plaintiff and different dates of response that states: "Please be advised that
only one consumer statement may be added to your credit file."

28. The above policy of violation of the FCRA in implementing such a policy of deceptive acts and practices representation of the FCRA to the Plaintiffs was done willfully with reckless disregard and done deceptively to the Plaintiffs as well as to millions of other consumers by the Defendant Equifax with the implementation of such a policy.

29. The action of the Defendant for refusal to include Plaintiffs' disputed statement is a clear violation of the Fair Credit Reporting Act **14 (FOURTEEN)** times and Defendant acted willfully with reckless disregard in violation of the F.C.R.A. and consequently in violation of the civil rights of the Plaintiffs for said violation. The Defendant has violated the Fair Credit Reporting Act (F.C.R.A.) [15 USC 1681 i ] 611 (b) Statement of Dispute; ( c ) Notification of consumer dispute in subsequent consumer reports; [15 USC 1681n ] 616 civil liability for willful non compliance.

30. On June 4, 2007 the Supreme Court ruled in Safeco construing a provision of the Fair Credit Reporting Act ("F.C.R.A.") which provides a Plaintiff with statutory damages of between $100 and $1,000 per violation where the Defendant "willfully fails to comply with any requirement imposed" under the F.C.R.A. [15 U.S.C. 1681]n. Consequently the Defendant's violation totaled **14 (FOURTEEN)** said violations of the FCRA.

31. The recent Supreme Court decision in the Syllabus of Safeco Insurance Co. of America et al v. Burr et al No -06-84, argued January 16, 2001 - Decided June 4 2007 states page 1 line 8: "FCRA provides a private right of action against businesses that use consumer reports but fail to comply," and a willful one entitles the consumer to actual, statutory, and even punitive damages 1681 n (a)." Syllabus page 4 line 4: "The Common Law has generally understood "recklessness in the civil liability sphere as conduct violating an objective standard; action entailing "an unjustifiably high risk of harm that is cither known or so obvious that it should be known. Farmer v. Brennan. 511 U.S. 825, 836. There being no indication that Congress had something different in mind, there is no reason to deviate from the Common Law understanding in applying the

-7-

statute."

32. The Syllabus continues page 4 line 10: "Thus a company does not act in reckless disregard of FCRA unless the action is not only a violation under a reasonable reading of the statute, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."

33. The Plaintiff's numerous communications **(14) FOURTEEN** to the Defendant verbal and written as indicated in the attached exhibits calling the Defendant's attention to violation of the consumers' rights in multiple communications would lead a reasonable man or woman to conclude that the Defendant was wrong in their continued denial of the Plaintiff's included statement and dispute given Plaintiff's **(14) FOURTEEN** communications which would have led a Defendant to examine their policy to ascertain if it was in compliance with the FCRA and if done would have reversed their position on that policy to be in compliance with Experian and Trans Union paragraph 23 and 24 Exhibit X Exhibit Y and failure to do so was an intentional act of commission on the part of the Defendant to violate the FCRA willfully and with reckless disregard **(14) FOURTEEN** times.

34. All the facts and exhibits point to a willful violation of the FCRA conclusively with reckless disregard for the civil rights of the Plaintiffs. The Plaintiff's exhibits show that the Defendant numerous times (**FOURTEEN (14)** flagrantly and deceptively violated the F.C.R.A. and the civil rights of the Plaintiffs to not publish the Plaintiff's statement with deceptive **written** representation to the Plaintiffs a total of **(Four (4)** times that they were not entitled to have said consumer statement included in the Equifax Credit Report and that the Plaintiffs were only entitled to one credit dispute statement in their credit file, paragraph 9; paragraph 10, Exhibit E; paragraph 19, Exhibit Q; paragraph 22, Exhibit V. Page 2 Opinion of the Supreme Court Section 1 A line 19: "F.C.R.A. provides a private right of action against businesses that use consumer reports but fail to comply. If willful,

-8-

however, the consumer may have actual damages or statutory damages ranging from $100 to $1000. and even punitive damages  1681 n (a) 2000  ed.)".

35. The Supreme Court further stated Section B II page 6 of its opinion of the Court line 9 "'where willfulness is a statutory condition of civil liability we have generally taken it to cover not only knowing violations of a standard but reckless ones as well. See McLaughlin V. Richland Shoe Co. 486 U.S. 128, 132-133 (1988)."

36. The Plaintiffs have suffered emotional humiliation and anxiety as a result of Defendants' continued failure and refusal deceptively to include Plaintiffs' disputed statement in their credit report willfully with reckless disregard **(14) FOURTEEN** times as requested by Plaintiffs exposing the RBS National Bank entry of "charge off" to 54 creditors (Exhibit AA and BB) without the Plaintiffs disputed statement explaining the circumstances of the charge off to all who would view Plaintiffs' credit report in a more favorable light with said inclusion of the statement which Defendant willfully and with reckless disregard failed to include **(14) FOURTEEN** times as requested.

37. The fact that the Defendant failed to comply with the stated sections and violations of the FCRA is sufficient to warrant a finding of willful with reckless disregard under the FCRA and in light of the recent Supreme Court decision and the Plaintiffs are entitled to statutory and punitive damages for violation of the FCRA with the deceptive acts and practices and continued failure and refusal to include Plaintiffs' statement in their credit report. The deceptive acts and practices not to include Plaintiffs' statement in their credit report with Defendants' repeated statement to the Plaintiffs verbally and in writing stating: "please be advised that only one consumer statement may be added to your credit file." a clear violation of the FCRA.

38. CALENDAR OF PLAINTIFFS' REQUESTS TO DEFENDANT FOR INCLUSION OF PLAINTIFFS' STATEMENT AND CREDIT REPORTS RECEIVED FROM

DEFENDANT BY PLAINTIFFS **WITHOUT** INCLUSION OF PLAINTIFFS'
STATEMENT OF DISPUTE.

| 1. | 3-01-07 | 8. | 4-26-07 |
|----|---------|----|---------|
| 2. | 3-20-07 | 9. | 4-28-07 |
| 3. | 3-26-07 | 10. | 5-08-07 |
| 4. | 4-12-07 | 11. | 5-16-07 |
| 5. | 4-17-07, First Letter | 12. | 5-19-07 |
| 6. | 4-17-07, Second Letter | 13. | 6-15-07 |
| 7. | 4-19-07 | 14. | 7-29-07 |
|    |         | 15. | 9-04-07 |
|    |         | 16. | 9-08-07 |

**TOTAL    16**

39. CREDIT REPORTS RECEIVED FROM DEFENDANT **WITHOUT** INCLUSION
OF PLAINTIFFS' DISPUTED STATEMENT AS REQUESTED IN EACH OF THESE
CREDIT REPORTS

| 1. | 3-1-07 | 6. 5-15-07 |
|----|--------|------------|
| 2. | 3-20-07 | 7. 5-16-07 |
| 3. | 4-12-07 | 8. 7-29-07 |
| 4. | 4-26-07 | 9. 9-8-07 |
| 5. | 5-3-07 | **TOTAL 9** |

40. **DENIAL OF INCLUSION OF PLAINTIFFS' DISPUTED STATEMENT BY DEFENDANT IN <u>WRITING</u> AND BY <u>VERBAL</u> STATEMENT TO CONSUMER. "PLEASE BE ADVISED THAT CONSUMERS' STATEMENT THAT CAN BE MAINTAINED ONLY ONCE IN YOUR CREDIT FILE."**

| | | |
|---|---|---|
| 3-24-07 | Credit Report Cover Letter | EAQ |
| 5-3-07 | Credit Report  Cover Letter | RJQ |
| 5-16-07 | Credit Report Cover letter | RJQ |
| 4-20-07 | Equifax Phone Conversation | RJQ with Dane  -  4-20-07   12:55 P.M. |
| 4-20-07 | Equifax Phone Conversation | RJQ with Trisha  - 4-20-07    1:40  P.M. |

**TOTAL  5**

TOTAL OF **14 DENIALS**  OF CONSUMERS' REQUEST TO ADD PLAINTIFF'S STATEMENTS TO THEIR CREDIT REPORTS.

## RELIEF

### FIRST RELIEF

A. The Plaintiffs request the Court to order the Defendant to place into both credit files of the Plaintiffs the statement submitted to the Defendant **fourteen (14)** times regarding RBS National Bank.

### SECOND RELIEF

B. The Plaintiffs request the Court to award damages to the Plaintiffs of $75,000.00 for actions by the Defendant which would shock the conscience of a reasonable man for willful, egregious, deceptive acts and practices on the part of the Defendant regarding violations of the stated sections of the Fair Credit Reporting Act as evidenced in this complaint to protect the civil rights of the Plaintiffs which are generally presumed to involve an inherent value of more than $75,000.00 as well as statutory damages and other as allowed under the FCRA 15 USC 1681 616 (1) A (2) (3).

### THIRD RELIEF

C. The Plaintiffs request the Court to award punitive damages to the Plaintiffs for actions by the Defendant which would shock the conscience of a reasonable man for willful, egregious and deceptive acts and practices on the part of the Defendant regarding violations of the stated sections of the Fair Credit Reporting Act as evidenced in this complaint and to allow this claim to go forward to a jury for their deliberations and judgment of punitive damages against the Defendant to stop the Defendant from violating the civil rights of the Plaintiffs and to allow a jury to establish whatever dollar damages they deem appropriate to send a message loud and clear that such reckless disregard while not be tolerated for violation of the FCRA and for the civil violation of a citizen's right under the FCRA.

### FOURTH RELIEF

D. The Plaintiffs also requests that the Court ascertain the number of other consumers

-12-

harmed by the Defendant's actions considering the Defendant has 200 + million credit files in their data base. and which said policy was directed to exclude consumer statements by commission which may involve millions of other consumers as the Plaintiff's situation was not an isolated incident based on the foregoing facts as well as the subsequent facts that follow in this request for relief considering the Defendant has placed their stated policy in written exhibits to the Plaintiff which stated policy is in direct contravention to the Fair Credit Reporting Act and Defendant's policy to stonewall the Plaintiffs **(14 times)** is a willful action to obstruct the consumer under the Fair Credit Reporting Act in order to determine the magnitude of the Defendant's actions for said violations through a discovery process of other investigatory means at the Court's disposal by appointment of an independent counsel to ascertain the extent of said violations by the Defendant of these areas of the Fair Credit Reporting Act and if so determined would be the basis of a class action on behalf of the consumers and initiated by the Court under **Rule 23** as a result of the Plaintiffs' separate cause of action against the Defendant. Such an action by the Court would be consistent with the Hills/Slack vs. Equifax case before the United States District Court of the Northern District of Georgia in which the United States District Court appointed a special counsel in which the appointed counsel identified over 5,500 other class members in their discovery process to be added as members of that class action lawsuit.

**The three Credit Reporting Agencies )Experian, Equifax and Trans Union) in the United States collectively issue more than one billion credit reports to third parties each year and 57.4 million of the one billion consumer credit reports are requested by individual consumers in 2003. (Source: FTC  a Federal Reserve System Report To Congress on the Fair Credit Reporting Act Dispute Process August 2006) (Exhibit DD - page 11).** Both the Defendant and another credit reporting agency (Trans Union) have 200 + million credit files each in their data base and both are of similar size of credit files. Research reveals that Trans Union similar in size to Equifax for

-13-

comparative purposes contains 3.7 billion items of information associated with approximately 200 million + items of information associated with approximately 200 million + consumers throughout the United States. These items consist of trade lines from credit grantors (tradelines is an industry term for the current and historical activities of a particular consumer's account with a particular credit grantor), and public record items from public record services. Each month Trans Union receives over 2 billion updates/additions to the items in its database. **Equifax figures would parallel Trans Union figures.** These updates come from approximately 85,000 different sources (called "furnishers") including banks, credit cards' companies, mortgage companies, collection agencies and other financial institutions. See e.g., Benson vs. Trans Union LLC 387 F Supp 2d 834, 841 (N.D. Ill 2005). (Noting vast scale of information received and processed by Trans Union.)

The above referenced "furnishers" are paying customers to CRA's. The average consumer is not a paying customer to these CRA's. The CRA's have a vested interest to insure satisfaction of their customers not consumers. The CRA's do not have a vested interest to accommodate the consumer who submits a disputed statement for inclusion into their credit file. On the contrary the consumer is only a means to a financial end for the CRA and without the consumer would cease to exist.. The Defendant Equifax has to manually enter the consumers' disputed statement to comply with the FCRA. In the Plaintiffs' case the Defendant did single out the Plaintiffs for special consideration for refusal **14 TIMES** and has a corporate policy to deny consumers their right to include a disputed statement involving more than one disputed statement. The Defendant has a deceptive act and practice policy to deny Plaintiffs' inclusion of the Plaintiffs' written statement by deceptive representation by Defendant Equifax to Plaintiffs and consumers. According to the Defendant Equifax consumers can have only one disputed statement in their credit file regardless of how many creditors the consumer may have reason to dispute which is a clear violation of the F.C.R.A. done willfully and with reckless disregard by Defendant Equifax. It is in **Equifax' monetary interest to pursue a policy of denial to consumers** in general for inclusion of said consumer dispute statements.

-14-

As such and I reiterate a previously stated request to the Court to begin proceeding to discover the facts of refusals by Defendant Equifax to consumers and to how widespread and to what numbers are involved in said denials by whatever means are at the Court's resources by appointment of a special counsel to investigate how widespread this action is by Defendant Equifax compared to the other CRA.'s both Trans Union and Experian who comply with the F.C.R.A. and Defendant Equifax does not comply.

Trans Union reported (Statistical Source: FTC and Federal Reserve Board Report To Congress on The Fair Credit Reporting Act Dispute Process Federal Reserve Board August 2006 (Exhibit CC) that approximately **(4%) of all consumer file disclosures result in a statement of dispute being added to the file after the repository completed its investigation and 57.4 million file disclosures (consumer requested credit reports) to consumers in 2003.**

Of the 18% of consumers in the Government Accounting Office survey per above report of people who disputed information in their credit file **30%** submitted a dispute statement to the C.R.A. for inclusion in their credit file. Source: Report to Congress on the Fair Credit Reporting Act Dispute Process Federal Reserve Board, August 2006 (Exhibit DD). We have two disparate figures 4% and 30% and which is the more accurate realistic figure.

First, the Trans Union figure of 4%. If you take the 57.4 million file disclosures (consumer requested credit reports) and use the 4% number that represents 2,296,000 million who added a statement to their credit report which is a very large universe who may be victims of "statement inclusion denial" and if you divide the 2,296,000 consumers for all the CRA's (3) the number (57.4 ./. 3 CRA = 765.3333) that can be assigned to Equifax is 765,333.3 (seven hundred sixty five thousand, three hundred thirty-three point three) consumers' statements that Defendant Equifax has to include in the consumers' credit report annually. Indeed, a very large number which gives rise to Defendant

Equifax's position verbally and in writing to deceptively represent to consumers that only 1 (one) request can be added to a credit file regardless of how many disputes a consumer may have with creditors which is a violation of F.C.R.A. and a deceptive act and practice violation of the F.C.R.A.

However, using the Government Accounting Office survey with **30%** who added a disputed statement to their credit file we see a more significant result given the significant gap between the 4% and 30%.

I believe it is more prudent to accept as more accurate the Government Accounting Office number to be more credible, impartial and objective and having no vested interest in the end result. "No fox in the hen house" mentality as evidenced by Trans Union figures.

The results are as follows: 57.4 million x 30% = 17.22 million consumers ./. 3CRA's = 5.47 million consumers **(per credit reporting agency)** who filed a disputed statement with each of the three Credit Reporting Agencies That is 5.47 million credit dispute statements to be added by Equifax to consumer files to be in compliance with the FCRA and to do otherwise would be a violation of the FCRA. The rationale of the Defendant Equifax to verbally and in writing to deny the adding of a consumer statement to a consumer credit file especially where a credit file may have more than one disputed creditor is now apparent given the above figures and a more profound probability for the Defendant Equifax to engage in such a deceptive act and practice in violation of the F.C.R.A. **The "rock requires turning over to see what is under it" and that can only be done by this Court in a discovery process on behalf of the consumer.**

The 4% figure submitted by Trans Union in the referenced source is highly suspect while the GAO figure of 30% is more realistic given the credibility of the source of that statistic, the Government Accounting Office. These figures are 2003 figures now some

-16-

five years old. Those numbers today would be substantially more in 2008.

Whether you accept the Trans Union statistics 4% or the Government Accounting Office 30% the numbers are staggering to what Equifax is required to include in all consumer credit reports and is the reason why Equifax is in violation of the FCRA regarding adding disputed statements.

The Plaintiff's case is a Cause of Action in the United States District Court and given the magnitude of the number of consumers who have been adversely impacted by the Defendant's actions yet to discovered and if so determined a separate cause of action should be initiated by this Court on behalf of those consumers who may have had their civil rights violated by the Defendant for violation of FCRA.

**The Plaintiffs call upon this Court to initiate such actions to determine the extent of such violations separate from the Plaintiffs' cause of action.**

Equifax Inc. is a CRA which as of 30 September 2007 on their income statement had revenue of 1.76 billion dollars, gross profit of 919.90 million dollars' a return on assets 11.22% and a return on equity of 23.53% and this is a company that exhibits the utmost disrespect and contempt for consumers and utilizes the consumer as a means to a financial end and will violate the consumers' right by whatever mechanism available to them to insure that their cost of operation is minimal while maintaining maximum financial capability in violating the right of consumers with deceptive acts and practices and this Court is the corrective vehicle to achieve that correction on behalf of consumers.

### FIFTH RELIEF

E. In addition Plaintiffs request the Court stop Equifax from misleading consumers per their communications to consumers stating that consumers are entitled to include a 100 word statement. The statement should read that a consumer is entitled to a "brief

-17-

statement" with no word limitation per F.C.R.A. to be included in their credit report
regarding disputed items and that <u>if the credit bureau assists the consumer in writing
consumer's statement the credit bureau may limit such statement not to exceed 100 words
only if the credit bureau assists creditor in writing said statement.</u> (Exhibit Z) attached
states: Notice to Consumers. " If you disagree with an item after it had been verified, you
may send to us a brief statement, not to exceed 100 words (two hundred words for Maine
residents), explaining the nature of your dispute. Your statement will become part of
your file and will be disclosed each time your credit file is accessed." <u>The implication
here by the Defendant is that the consumer is limited to a brief statement of 100 words or
less as the wording of "if assisted by the credit bureau" is intentionally omitted to deceive
the consumer. The F.C.R.A. Statement of Dispute (b) 611 states: "if the reinvestigation
does not resolve the dispute the consumer may file a brief statement setting forth the
nature of the dispute. The consumer reporting agency may limit such statements to not
more than one hundred words, **if it provides the consumer with assistance in writing a
clear summary of the dispute."**</u> The Defendant is misleading the consumer "willfully"
with their statement Exhibit Z as opposed to the F.C.R.A. Statement indicated above.
This misrepresentation is a deceptive act and practice again on the part of Equifax done
willfully and most obviously with continued reckless disregard for the rights of the
Plaintiff and the millions of other consumers so aggrieved and a clear violation of the Fair
Credit Reporting Act. There is no end to their dishonesty. The Defendant's dishonesty is
laid bare in the enclosed Exhibit Z. This is another example of the flagrant disregard of
the FCRA by the Defendant and the flagrant disregard for the rights of consumers will
end when the Court enforces the Law.

## TRIAL BY JURY

The Plaintiffs request a trial by Jury.

## FEES

The Plaintiffs also request the recovery of Court Filing Fees

## EXHIBIT'S A THROUGH Z

Plaintiffs will supply referenced Exhibits to the Court to substantiate factual allegations
made herein at trial time or at filing of the complaint or at the pleasure of the court.

Signatures:

Names: Richard J. Quinlivan - Elizabeth A. Quinlivan Pro Se
Address: 87 Hill St; Shrewsbury Ma 01545   Phone: 508 842-5065
Date: 3-3-08

-19-